**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| **SAMUEL HOLMES**<br>    **Plaintiff,**<br><br>v.<br><br>**LEXINGTON-CJD, LLC d/b/a/**<br>**FREEDOM CDJR OF LEXINGTON**<br>    **Defendant.** | **CASE NO. 5:23-CV-249-KKC-MAS**<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a Motion for Summary Judgement (DE 70) filed by Defendant Lexington-CJD, LLC ("Freedom"). Now that this motion is fully briefed, it is ripe for the Court's review. For the following reasons, Freedom's motion is GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND

This action arises from the circumstances surrounding Plaintiff Samuel Holmes' purchase of a limited-production 2023 Dodge Challenger Black Ghost ("Black Ghost") from Freedom. Holmes, a businessman and real estate investor, owns at least 15 collector cars. Holmes purchased limited-production vehicles, including the Black Ghost, as long-term retirement investments. Freedom is a Kentucky LLC that sells and services cars in the Commonwealth.

On May 20, 2023, Holmes purchased the Black Ghost from freedom. This was the third limited-production vehicle Holmes purchased from Freedom in 2023. Previously, Holmes purchased a 2023 Dodge Charger King Daytona for $156,112.81 on May 4 and a Dodge Challenger Swinger for $80,304.00 on May 10. Notably, the two cars were purchased from Freedom with an odometer reading of 11 miles. (DE 77 n.11.)

The sale and acquisition of the Black Ghost on May 20, 2023 did not present a standard car-buying transaction. Holmes states that he was "very ill" on that day, claiming to have suffered an extreme attack of sarcoidosis the day before that complicated his diabetes. (DE 77 at 4, n.12.) Holmes maintains that the illness caused him to have a reduced ability to see and think. (*Id.*) Although ill, Holmes informed Freedom's sales professional, Ryan Hall, that he wanted to come in and pick up the vehicle. (DE 70 at 6.) To facilitate this, Hall transported Holmes to the dealership. (*Id.*) Freedom states that when Holmes arrived at the dealership, he was given a demonstration of all the vehicle's features and even sat in the driver's seat. (*Id.* at 7.)

At some point after that, Holmes signed the necessary paperwork ("Purchase Packet") to purchase the Black Ghost. Holmes testified that both he and Freedom signed five documents in the Purchase Packet, all of which indicated that the Black Ghost's odometer read 11 miles. The executed documents stating that the odometer read 11 miles were the (1) Odometer Disclosure Statement; (2) Limited Power of Attorney to Transfer Ownership and Disclose Mileage; (3) Warranty Registration Statement; (4) Retail Purchase Agreement; and (5) Application for Kentucky Certificate of Title. (DE 77 at 1–2.)

Although the purchase documents stated that the Black Ghost had an odometer reading of 11 miles, the parties dispute the "actual" mileage on the Black Ghost at the time of purchase. Holmes asserts that he purchased the Black Ghost with 11 miles on it. It was not until after he accepted delivery of the Black Ghost and obtained possession of it that he noticed the odometer read "24 or 25" miles. (DE 70 at 2.)

To the contrary, Freedom asserts that Pre-Delivery Inspection Report indicates the Black Ghost had 20.1 miles on its odometer when Freedom received it on May 19, 2023. (*Id.* at 19.) That same day, Freedom asserts that its detail shop manager, Sarah McHone, drove the Black Ghost approximately four miles in accordance with the manufacturer's procedures.

2

(*Id.*) The Black Ghost's Pre-Delivery Inspection Report states that the odometer read 24.5 miles at "End of Road Test." (*Id.*) Thus, Freedom maintains that the Black Ghost had 24.5 miles on the odometer on May 20, 2023, the day Holmes purchased the vehicle.

The actual mileage on the car on May 20, 2023 is not entirely clear. This dispute in mileage is hereinafter referred to as the "13.5 mile discrepancy." Freedom contests that the 13.5 mile discrepancy is a result of a forgetful error. Freedom's general manager, Robert Cecil, testified that Freedom's software automatically pre-populates "11" as the mileage on the paperwork for every sale of a new vehicle. (DE 70 at 18.) Freedom asserts that a sales professional is then required to replace the default mileage amount with the vehicle's actual mileage before printing the paperwork, but, in this case, the sales representative failed to change the default number.

Holmes contests Freedom's explanation of the 13.5 mile discrepancy. He asserts that the software does not default mileage to 11 or any other number, and that the shop manager, McHone physically typed "1" and "1" in all five of the named Purchase Packet documents. (DE 77 at 5.) Additionally, he points to Freedom's contradictory explanation of events. The general manager, Cecil, testified the Black Ghost arrived with 24 miles, while McHone, the shop manager, testified that it arrived with 20.1. (DE 77 at 6.) Holmes' expert, Steven Proto, contends that it is "highly, highly unlikely that 20.1 or 24 miles were put on the vehicle at the manufacturer." (*Id.* at 15.)

Even though the necessary paperwork had been signed on May 20, 2023 Holmes did not take immediate possession of the Black Ghost. He officially took possession 13 days later on June 2, 2023, when it was transported by trailer to a detailer for ceramic coating. On June 3, 2023, Holmes called Freedom to express his dissatisfaction in the extra mileage alongside finding "multiple scratches on the exterior of the vehicle." (DE 70 at 2.) After the parties were

3

unable to come to an agreement, Holmes returned the Black Ghost to Freedom's possession on June 26, 2023.

On August 17, 2023, Holmes filed this action against Freedom and FCA US LLC ("Dodge") in Fayette County Circuit Court. (DE 1-1.) The complaint asserts claims for breach of contract, intentional infliction of emotional distress, intentional misrepresentation, conspiracy, violation of KRS § 367.842, violation of the Kentucky Consumer Protection Act ("KCPA"), fraud, and seeks punitive damages as well as injunctive relief in the form of a return of the price paid. (DE 8-2.) On August 29, 2023, Defendants removed the case to federal court. (DE 1.) On November 6, 2023, this Court dismissed Dodge as a party to this action. (DE 18.)

Now, Freedom moves for summary judgment on all claims, arguing as follows: (1) no reasonable jury could find the reasonable inducement necessary to allow [revocation of acceptance] nor could [it] find the reasonable reliance required for a fraud and intentional misrepresentation claim; (2) the record does not contain competent evidence that Holmes suffered a "substantial impairment" or damages in connection with the purchase; (3) the fraud/intentional misrepresentation claims fail because no reasonable jury could find evidence to overcome the presumption of Freedom's innocence and honesty; (4) the intentional infliction of emotional distress claim fails because Holmes failed to identify an expert; (5) Holmes lacks standing under the KCPA and/or KRS § 367.842; (6) Holmes may not seek recission or any other form of equitable relief based on mutual mistake or unjust enrichment; and (7) Holmes' conspiracy claim fails because it is not an independent cause of action under Kentucky law. (DE 70 at 3.) Additionally, Freedom seeks attorney's fees and storage fees in the amount of $50/day.

4

## II. DISCUSSION

A district court will grant summary judgment when the moving party shows there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). If the moving party carries this burden, the burden of production shifts to the nonmoving party to "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322.

At the summary judgment stage, the Court does not weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Further, the Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, this Court determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52.

### A. REVOCATION OF ACCEPTANCE

Count III of Holmes's complaint sets forth a claim for breach of contract. He alleges that "the dealership's inability to deliver as per the agreed mileage and condition amounts to a breach of the sales agreement" and, because of Freedom's breach, seeks to revoke his acceptance of the Black Ghost. (DE 8-2 ¶ 35.) Freedom contends that Holmes is not entitled

5

to revoke his acceptance because he did not suffer a "substantial impairment" nor was he "reasonably induced," as required under KRS § 355.2-608. (DE 70 at 13.) Additionally, it asserts that Holmes has not incurred any losses in connection with the purchase or the 13.5 mile discrepancy, which would eliminate his ability to recover money damages under a breach of contract theory. (*Id.*)

Preliminarily, we note that questions of whether conduct amounts to acceptance, and whether a party has rightfully revoked that acceptance are ordinarily questions of fact for the jury. *See Chernick v. Casares*, 759 S.W.2d 832, 834 (Ky. Ct. App. 1988).

Kentucky's Uniform Commercial Code no longer requires the plaintiff to elect between revocation of acceptance and recovery of damages as a remedy for breach. KRS § 355.2-608 cmt. 1. In other words, if a defendant is in breach, the plaintiff is entitled to either revoke their acceptance or seek monetary damages. *Id.* The pertinent language of § 355.2-608 is as follows:

> **(1)** The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
>
>> **(b)** without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

*Id.* Accordingly, for a buyer to revoke their acceptance, the nonconformity must (1) substantially impair its value to the purchaser and (2) the purchaser's acceptance must be reasonably induced by the seller, and without knowledge of the nonconformity. *Id.*

### i. Substantial Impairment

Freedom argues that Holmes cannot present competent evidence of a substantial impairment as there was no diminished value in the Black Ghost before and after discovery of the "actual" mileage. (DE 70 at 17–20.) Holmes argues that the 13.5 mile discrepancy is

6

classified as "unexplained prior event," which inherently diminishes the Black Ghost's value by $103,813.00. (DE 70 at 18–19.)

KRS § 355.2-608 contains an element of subjectivity by focusing on whether the nonconformity substantially impairs its value to the purchaser. *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 289 (Ky. 1991) (citation omitted). However, the test of impaired value is a "subjective one which must be evaluated by objective standards." *Id*. This standard requires "an objective determination that the value of the goods to the particular buyer, and not the average buyer, has in fact been substantially impaired." *Id*. The appropriate test for determining a substantial impairment is the difference between the fair market value immediately before and after the injury. *Louisville & N.R. Co. v. Lankford*, 200 S.W.2d 297, 299 (Ky. 1947).

Although it has not moved to exclude Holmes' expert testimony under FRE 702, Freedom argues that Holmes' expert's valuation is excludable from evidence at trial, and thus the record would contain no evidence of a substantial impairment. In support of this contention, Freedom cites *Paul Miller Ford, Inc. v. Smith*, in which the trial court barred the defendant from cross-examining the plaintiff's expert witness concerning the expert's assessment of the value of used cars. 2024 WL 2490160, at *6 (Ky. App. May 24, 2024). Because Holmes' expert used a similar valuation method as the expert in that case, Freedom attests that the testimony should be excluded.

However, *Paul Miller Ford* is distinguishable from this case. That case does not create a brightline rule prohibiting expert testimony of such valuation methods, nor are the circumstances of that case similar to this one. Because *Paul Miller Ford* does not render Holmes' valuation method improper, that case does not present a suitable basis for excluding Holme's expert's testimony.

7

In fact, Holmes' expert's valuation comports with the *Louisville & N.R. Co. v. Lankford,* 200 S.W.2d 297, 299 (Ky. 1947) case cited by Freedom in their Motion. (*See* DE 70 at 17.) *Lankford* holds that the proper measure for damages is the difference between the fair market value immediately before and after the injury. *Id.* Holmes' expert's estimate determines the amount of loss by subtracting the Black Ghost's sale price from the average of the 2024 auction prices of three other 2023 Black Ghosts, to reach a figure of $103,813.00. Given the fact that only 300 black ghosts were produced in 2023, and retrieving sales data on such vehicles is even more limited, the expert's valuation method aims to estimate the value reduction after the injury.

Whether the mileage discrepancy substantially impairs the value of the Black Ghost requires a thorough analysis of the vehicle's value with 11 miles, compared to its value with 24 miles. It is the jury's role to weigh the evidence and make an objective determination of Holmes' subjectivity. A reasonable jury could find that the Black Ghost's value was substantially impaired from Holmes' perspective. An objective assessment could find that even a reduction in the Black Ghost's value well below $103,813.00 would still constitute a substantial impairment to Holmes. As a collector and investor, the reduced value would substantially impair his ability to achieve long term profit. Because the Black Ghost's actual decreased value due to the 13.5 mile discrepancy is disputed, and that amount could be substantial, the Court will deny Freedom's motion for summary judgement on Holmes' breach of contract claim.

    **ii.    Reasonable Inducement**

Freedom also asserts that Holmes' acceptance was not reasonably induced by any of the assurances made to him, and implies that Holmes knew, or should have known, the Black Ghost's mileage after being within eyesight of the odometer on multiple occasions. (DE 70 at 13–15.) Freedom argues that Holmes had the duty to exercise common sense when

8

he sat in the driver's seat on May 20, 2023, and when he was allegedly in "very close proximity" of the Black Ghost when it was hauled away from Freedom on June 2, 2023, implying that he had the opportunity to view the mileage on the odometer. (DE 70 at 9.) Holmes contends that he did not know what the actual mileage was, and that he is entitled to rely on the terms of the purchase agreement. (DE 77 at 14.) Additionally, Holmes contests Freedom's recount of the events, as he claims he did not "get within 50 feet of the Black Ghost on June 2, 2023 as he was still very ill." (DE 77 at 7 n. 19.)

"Assurances", as set forth in KRS § 355.2-608(1)(b), can rest "in the circumstances or in the contract as in explicit language used at the time of delivery." *Id*. cmt. 3. Assurances can be made in good or bad faith. *Id*.

Analyzing the facts and circumstances surrounding the purchase of the Black Ghost to determine reasonable inducement is better left for the jury. It is not this Court's job to weigh the evidence and determine the truth as to whether Holmes actually saw the mileage, was negligent for not noticing the mileage, or failed to exercise common sense when he sat in the driver's seat on May 20, 2023. Similarly, this Court will not determine whether Holmes had an opportunity to view the odometer on June 2, 2023, as that remains a disputed fact.

Construing the facts in the light most favorable to the non-moving party, the Court finds that genuine issues of material fact remain, precluding summary judgment in favor of Freedom. Holmes contends that he reasonably relied on the Purchase Packet information, which listed the odometer reading as 11 miles, and that, given the circumstances of his illness and lack of personal knowledge regarding the mileage on May 20, 2023, a reasonable jury could find that Freedom's assurances, namely the five Purchase Packet documents reflecting 11 miles, reasonably induced him to purchase the Black Ghost. Accordingly, Freedom's motion for summary judgment on Holmes' breach of contract claim is denied.

In summary, Freedom argues that Holmes cannot revoke his acceptance of the Black Ghost because (1) its value was not "substantially impaired" and (2) Freedom did not "reasonably induce" Holmes' acceptance. Because there are material facts in dispute regarding these two elements, Freedom's motion for summary judgement regarding these claims is denied.

### B. FRAUD/MISREPRESENTATION

Holmes alleges separate causes of action against Freedom for fraud and intentional misrepresentation. (*See* DE 8 Counts V and IX.) Freedom argues that the two claims have the same meaning under Kentucky law. (DE 70 at 15.) Holmes' response does not address this issue. (*See* DE 77 at 13.) It is true that fraud and intentional misrepresentation have the same meaning under Kentucky common law. *Morton v. Bank of the Bluegrass & Trust,* 18 S.W.3d 353, 358 (Ky. App. 1999). Accordingly, this Court will address the intentional misrepresentation and fraud claims together.

Freedom argues that Holmes' fraud/intentional misrepresentation claim fails because he did not reasonably rely on any representation in the Black Ghost purchase documents regarding its mileage, and no reasonable jury could find sufficient evidence in the record to overcome the presumption of Freedom's innocence and honesty. Holmes' theory is that Freedom "capitalized on [his] vulnerable health condition" and that the orchestrated transportation of Holmes to the dealership constituted a "calculated attempt… to divert his attention or hinder his capacity to critically evaluate [the mileage]." (DE 8-2 ¶ 68.) Holmes avers that maneuver was a ploy to mislead him. (*Id.*) Notably, Holmes provides no further evidence outside of his amended complaint as to how this "calculated attempt" was committed intentionally or recklessly by Freedom.

A successful fraud claim under Kentucky law requires the plaintiff to set forth a prima facie claim that the defendant (1) made a material representation to the plaintiff, (2) that

10

this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff. *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009).

The plaintiff must establish these six elements of fraud by clear and convincing evidence. *United Parcel Service Co. v. Rickert,* 996 S.W.2d 464, 468, 46 6 Ky. L. Summary 44 (Ky. 1999). "Where the nonmoving party faces a heightened burden of proof, such as clear and convincing evidence, he must show in opposition to the motion for summary judgment that he can produce evidence which, if believed, will meet the higher standard." *White v. Turfway Park Racing Ass'n,* 909 F.2d 941, 944 (6th Cir. 1990) (citations omitted). Kentucky law recognizes a presumption of innocence and honesty against fraud claims. *Compressed Gas Corp., Inc. v. U.S. Steel Corp.*, 857 F.2d 346, 349–50 (6th Cir. 1988).

Freedom argues that no reasonable jury could find sufficient evidence to overcome the presumption of Freedom's innocence. The Court agrees. Presuming Freedom was honest and innocent means construing the mileage dispute as a genuine mistake. Holmes has pointed to evidence sufficient to create a dispute of material fact as to the mileage and circumstances surrounding the purchase of the Black Ghost. However, Holmes does not point to sufficient evidence that Freedom's conduct was intentional or reckless. There is no evidence in the record, let alone clear and convincing evidence, that the erroneous mileage presented in the Purchase Packet was inserted intentionally or recklessly. Similarly, Holmes does not present sufficient evidence as to how Freedom intentionally or recklessly distracted his attention, or suppressed vital details of the transaction in an effort to keep him from finding out the "actual" mileage. Because Holmes fails to overcome this presumption, Freedom's motion for summary judgement is granted as to this count.

11

### C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Freedom argues that Holmes cannot maintain the independent cause of action for intentional infliction of emotional distress. A plaintiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment. *Osborne v. Keeney*, 399 S.W.3d 1, 17– 18 (Ky. 2012). Holmes has not identified an expert witness to testify in this capacity, and the deadline to do so has long expired. Accordingly, Freedom is entitled to summary judgement on Holmes' intentional infliction of emotional distress claim.

### D. STANDING UNDER THE KCPA

Freedom argues that Holmes does not have standing to bring Counts VII and VIII. Count VII alleges a violation of Kentucky's lemon law and Count VIII alleges a violation of the KCPA. Notably, both laws fall within Chapter 367 of the Kentucky Revised Statutes, which governs consumer protection. Holmes has impliedly conceded that these two counts allege the same cause of action. (DE 70 at 21; *see also* DE 61 at 18.) Accordingly, this Court will address the standing issue for these two counts as one.

The KCPA applies to "any person who purchases or leases goods or services primarily for personal, family or household purposes." KRS § 367.220(1). Kentucky courts construe the KCPA liberally to protect consumers, as its purpose is remedial, aiming to provide broad access to remedies for deceptive practices. *Commonwealth v. North American Van Lines*, 600 S.W.2d 459, 462 (Ky. 1979). Notwithstanding the Act's broad construction, the KCPA does not apply to purchases made for investment or business purposes. *See Keeton v. Lexington Truck Sales, Inc.*, 275 S.W.3d 723 (Ky. Ct. App. 2008).

Freedom argues that Holmes did not purchase the Black Ghost for personal, family or household purposes and thus is not a "consumer" for purposes of the KCPA. Freedom asserts that Holmes purchased the Black Ghost to "make good money." (DE 70 at 22.) Holmes

12

counters that the KCPA is to be construed broadly, and that purchasing the Black Ghost was for a long term-retirement investment, which he alleges is a personal purpose. (DE 77 at 15–16.) Holmes argues that the purchase was not for "commercial gain" but for "personal enjoyment and investment value." *Id.*

Holmes' purchase of the Black Ghost is for investment purposes. He expects to "make good money" from his purchase. If and when Holmes sells the Black Ghost is immaterial. He has a rare car collection and purchasing the Black Ghost increases the value of that collection. Although Holmes likely gets personal satisfaction from the fact that he owns rare cars, his primary purpose for owning the cars is not for personal enjoyment. Holmes is a real estate investor and savvy businessman. He purchased the vehicle for a $150,000 premium. (DE 70 at 5.) The 13.5 mile discrepancy is much more significant to subsequent collectors and enthusiasts than it is for recreational buyers. Purchasing the Black Ghost was another way for Holmes to diversify his investments and expand his portfolio. Although the reach of the KCPA is broad, it is not broad enough to cover the purchase of a limited production vehicle purchased as a long-term investment. Accordingly, Holmes does not have standing to sue under the KCPA. The Court grants Freedom's motion for summary judgement as to Holmes' KCPA claim.

### E. INJUNCTIVE RELIEF

In Count XI of his complaint, Holmes seeks injunctive relief in the form of a return of the price paid. Holmes argues that the "request for injunctive relief aligns with the UCC's principles of ensuring equitable outcomes in commercial transactions and protecting consumers from unjust enrichment." (DE 8-2 ¶ 89). Freedom counters that Holmes cannot seek a recission or unjust enrichment claim because the relief he seeks is specifically provided for under KRS § 355.2-608 and other provisions of the Uniform Commercial Code. Freedom misconstrues Holmes' claim for injunctive relief as a claim for unjust enrichment.

Freedom correctly asserts that "unjust enrichment is unavailable when the terms of an express contract control." *Furlong Development Co., LLC v. Georgetown-Scott Cnty Planning and Zoning Commission*, 504 S.W.3d 34, 40 (Ky. 2016). However, Holmes is not making an unjust enrichment claim, rather, he is asking the court to order the proper form of relief in the event his breach of contract claim is successful. The parties are bound by the May 20, 2023 contract, and the appropriate avenue for relief lies in the Uniform Commercial Code. If a jury finds that Holmes' revocation of acceptance under KRS § 355.2-608 was proper, then he is in effect entitled to a return of the purchase price. Because the Court denied Freedom's motion for summary judgment on the breach of contract claim, it likewise denies the motion with respect to this claim.

### F. CONSPIRACY

Freedom argues that Holmes' conspiracy claim fails if he cannot prove the underlying causes of action because it is not an independent cause of action under Kentucky law. Without an underlying tort that the claim of civil conspiracy is based upon, Plaintiff's claim of conspiracy cannot survive. *Davenport's Adm'x v. Crummies Creek Coal Co.,* 184 S.W.2d 887, 887-888 (Ky. 1945). Because Holmes' only claim remaining is for breach of contract, there is no underlying tort for his conspiracy claim to latch onto. Accordingly, Freedom's motion for summary judgment as to Holmes' conspiracy claim is granted.

### III. CONCLUSION

For the aforementioned reasons, the Court hereby ORDERS as follows:

1) Freedom's Motion for Summary Judgement (DE 70) regarding Holmes' revocation of acceptance under KRS § 355.2-608 is DENIED;

2) Freedom's Motion for Summary Judgement (DE 70) regarding Holmes' fraud/ misrepresentation claim is GRANTED;

3) Freedom's Motion for Summary Judgement (DE 70) regarding Holmes' intentional infliction of emotional distress claim is GRANTED;

4) Freedom's Motion for Summary Judgement (DE 70) regarding Holmes' KCPA claim is GRANTED;

5) Freedom's Motion for Summary Judgement (DE 70) regarding Holmes' injunctive relief claim is DENIED; and

6) Freedom's Motion for Summary Judgement (DE 70) regarding Holmes' conspiracy claim is GRANTED.

As a result of this Opinion, the only remaining claims in this action are for breach of contract and injunctive relief, as set forth in Counts III and XI of Plaintiff's Amended Complaint.

This 23rd day of October, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY