**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| **SAMUEL HOLMES** | **CASE NO. 5:23-CV-249-KKC** |
|     **Plaintiff,** | |
| **v.** | **OPINION AND ORDER** |
| **LEXINGTON-CJD, LLC d/b/a/** | |
| **FREEDOM CDJR OF LEXINGTON** | |
|     **Defendant.** | |

*** *** ***

This matter is before the Court on Plaintiff Samuel Holmes' Motion for Summary Judgment. (R. 115.) Now that this matter is fully briefed, it is ready for review. For the following reasons, Holmes' Motion is DENIED.

## I.  FACTUAL BACKGROUND

This case arises from Holmes' purchase of a limited-production 2023 Dodge Challenger Black Ghost ("Black Ghost") from Defendant Lexington-CJD, LLC ("Freedom"). The Court incorporates by reference the facts previously set forth in its prior Order granting in part and denying in part Freedom's Motion for Summary Judgment. (R. 82.) The relevant facts for purposes of Homles' Motion are as follows.

Holmes contracted with Freedom to purchase the Black Ghost on May 20, 2023. (R. 113 at 2.) At the May 20, 2023 closing, the contract documents represented that the Black Ghost's mileage was 11 miles. (R. 114 at 2.) Before, and for nearly two weeks after closing, the Black Ghost remained at Freedom's dealership. It was not until June 2, 2023, that Holmes took possession of the Black Ghost, when it was transported to his storage facility. (*Id.*) The Black Ghost remained in storage for approximately three days, until June 5, 2023, when Holmes arranged for it to be transported to a detailer for application of a ceramic

coating. (*Id.*) The Black Ghost remained with the detailer until June 9, 2023, when it was returned to Holmes' storage facility. (*Id.*)

On June 9, 2023, Holmes discovered an alleged discrepancy between the contract's representation of 11 miles and the vehicle's actual mileage of approximately 24 miles. (*Id.*) Despite this discovery, Holmes did not return the vehicle to Freedom until June 26, 2023. (*Id.*) At some point between the May 20, 2023 closing and the June 26, 2023 return, Holmes titled the vehicle in his name. (R. 113 at 5.)

The parties were unable to reach a resolution, and Freedom refused to reimburse Holmes for the purchase price. Holmes subsequently filed this action. Following an earlier round of summary judgment, the Court dismissed nine of the eleven counts in Holmes' Amended Complaint. (R. 82.) The remaining claims are for breach of contract and injunctive relief, set forth in Counts III and XI of the Amended Complaint. (R. 82 at 15.) Although the dispositive motion deadline had passed, Holmes sought leave to file his own motion for summary judgment (R. 96), which the Court granted (R. 108). Holmes now moves for summary judgment on both remaining counts.

## II.  LEGAL STANDARD

A district court will grant summary judgment when the moving party shows there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). If the moving party carries this burden, the burden of production shifts to the nonmoving party to "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dept. of Transp.*, 53

F.3d 146, 150 (6th Cir. 1995). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322.

At the summary judgment stage, the Court does not weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249 (1986)). Further, the Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, this Court determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52.

### III.  ANALYSIS

Holmes moves for summary judgment on his remaining claims for breach of contract and injunctive relief. The requested "injunctive relief" is simply a return of the purchase price, so prevailing on that claim is entirely dependent on the success of the breach of contract claim. In support of these claims, Holmes advances three arguments: (1) he rejected the Black Ghost; (2) he revoked his acceptance of the Black Ghost; and (3) the contract should be rescinded on the basis of mutual mistake. (R. 115 at 3, 4, 22.)

Two aspects of this motion are notable. First, Holmes raises the rejection and mutual mistake arguments for the first time, despite the case having been pending since August 2023. Second, his revocation of acceptance argument has already been raised and resolved in the Court's prior summary judgment order. (R. 82 at 5.) Notwithstanding these peculiarities, the Court will address Holmes' arguments in turn.

#### A.  Holmes is not entitled to summary judgment on a rejection theory

Holmes contends that returning the vehicle to Freedom constitutes a rejection under KRS § 355.2-602. (R. 115 at 3.) Notably, in his complaint and prior briefing, Holmes

3

consistently framed his conduct as a revocation of acceptance, not a rejection. (*See* R. 8-2 at 4; R. 77 at 3, 25.) While this shift in theory is notable, the Court need not decide whether it is procedurally improper because his argument fails on the merits.

Under Kentucky law, rejection requires that the buyer (1) reject within a reasonable time after delivery, (2) seasonably notify the seller, and (3) refrain from exercising ownership over the goods. KRS § 355.2-602(1), (2)(a). Acceptance, by contrast, occurs when the buyer fails to make an effective rejection or engages in conduct inconsistent with the seller's ownership. KRS § 355.2-606.

The evidence in the record presents facts which no reasonable jury could find that Holmes effectively rejected the Black Ghost. Although it is undisputed that he notified Freedom of his dissatisfaction, and its is disputed whether Holmes acted within a "reasonable time," the undisputed facts establish that Holmes exercised ownership over the car.

Holmes took delivery of the Black Ghost on June 2, 2023, and directed it be transported to his storage facility. (R. 83 at 3; R. 114 at 2.) Holmes kept the Black Ghost there for three days, then arranged for it to be transported to a detailer, where he paid to have a ceramic coating applied on it. (*Id*.) The Black Ghost remained with the detailer until June 9, 2023, the date Holmes discovered the mileage discrepancy. The Black Ghost was not returned to Freedom until June 26, 2023. (*Id*.) Holmes also took title to the Black Ghost. (R. 113 at 5.)

These actions are inconsistent with Freedom's ownership. Storing, performing aftermarket work, and titling the Black Ghost in his name signify acceptance. Such conduct defeats any claim of rejection under KRS § 355.2-602(2)(a). Because Holmes cannot establish an essential element of rejection, his Motion for Summary Judgment is denied on that theory.

**B. Genuine disputes of material fact preclude summary judgment on a revocation of acceptance theory**

Holmes alternatively argues that he revoked his acceptance of the Black Ghost under KRS § 355.2-608. (R. 115 at 4.)

To revoke acceptance, Holmes must show that (1) the Black Ghost's nonconformity substantially impaired their value to him, (2) his acceptance was reasonably induced by difficulty of discovery or the seller's assurances, (3) revocation occurred within a reasonable time after discovery, (4) he notified the seller, and (5) the goods were not substantially changed in condition for reasons unrelated to their defects. KRS § 355.2-608.

The Court has already considered this theory and determined that it presents questions of fact for the jury. (R. 82 at 5–10.) Holmes offers no new evidence or argument that would alter that conclusion.

Material disputes remain as to whether the alleged mileage discrepancy substantially impaired the vehicle's value, and whether Holmes' acceptance was reasonably induced. (*Id.*) These are fact-intensive determinations not suitable for resolution on summary judgment. Accordingly, Holmes' Motion for Summary Judgment is denied regarding his revocation of acceptance theory.

### C. Holmes' mutual mistake theory fails

Finally, Holmes attempts to reframe the transaction as one premised on mutual mistake. He argues that the contract's representation that the Black Ghost's mileage was 11, combined with Freedom's alleged knowledge that the mileage was in fact 24.5, establishes a mutual misunderstanding sufficient to warrant recission. (R. 115 at 22.) This argument fails both procedurally and substantively.

As an initial matter, Holmes did not plead or otherwise develop a mutual mistake theory at any point prior to the second round of summary judgment briefing, which was more than two and a half years after the case's removal. His Complaint contains no reference of mistake and instead centers on allegations of intentional and tortious conduct by Freedom.

5

Likewise, his response to Freedom's Motion for Summary Judgment does not articulate mutual mistake as a basis for relief. It is well established that a plaintiff may not raise a new legal theory for the first time at the summary judgment stage, particularly where doing so would expand the scope of the case beyond the claims and factual theories previously disclosed. *See Carter v. Ford Motor Co.*, 561 F.3d 562, 566 (6th Cir. 2009) (requiring "fair notice" of the nature and grounds of a claim).

This principle is not a mere technicality. The federal pleading framework requires that a plaintiff provide sufficient factual content to render a claim plausible, not merely conceivable. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A mutual mistake claim carries distinct elements and equitable remedies that differ fundamentally from claims based on fraud, or breach of contract under the Kentucky UCC. *See Bradshaw v. Kinnaird,* 319 S.W.2d 475, 477 (Ky. 1959) (noting that mutual mistake is an equitable claim). By failing to plead facts suggesting a shared misunderstanding between the parties, Holmes deprived Freedom of notice and the opportunity to conduct discovery or develop defenses specific to that theory. The Court will not allow Holmes to pivot at this stage.

Even setting aside this procedural defect, Holmes' argument fails on the merits. A mutual mistake is one in which both parties to a contract participate by each laboring under the same misconception. *Clayville v. Huff*, No. 2005-CA-001497-MR, 2007 Ky. App. Unpub. LEXIS 722, at *6 (Ct. App. Nov. 6, 2007) (citing *Fields v. Cornett*, 254 Ky. 35, 70 S.W.2d 954, 957 (Ky. 1934); *Coleman v. Ill. Life Ins. Co.*, 82 S.W. 616, 617, (Ky. 1904). Mutual mistake is an equitable claim *Bradshaw*, 319 S.W.2d at 477. "The cancellation of an executed contract is the exertion of the most extraordinary power of a court of equity, which ought not to be

exercised, except in a clear case and on strong and convincing evidence." *Lossie v. Central Trust Co. of Owensboro*, 219 Ky. 1, 292 S.W. 338, 340 (Ky. 1926) (citations omitted).

Holmes fails to present any evidence, let alone clear and convincing evidence, demonstrating that he and Freedom had the same misconception regarding the mileage discrepancy. Construing the facts in Freedom's favor, as the Court must at this stage, the mileage discrepancy resulted from a unilateral clerical error by Freedom. Freedom has consistently maintained that it knew the Black Ghost's mileage was 24.5 at the time of contracting but mistakenly recorded it as 11 in the written documents. Under this version of events, there was no shared misconception. Holmes may have believed the mileage was 11, but Freedom did not. That divergence precludes a finding of mutual mistake as a matter of law.

Rather than presenting a case of mutual mistake, the facts align squarely with Kentucky's UCC framework governing nonconforming goods. A good is nonconforming when it fails to meet the specifications set forth in the contract. *See* KRS § 355.2-106. Under Freedom's version of events, it delivered a vehicle with mileage exceeding that stated in the contract, rendering the vehicle nonconforming. The UCC provides a comprehensive set of remedies for such situations, including rejection, revocation of acceptance, and damages. These statutory remedies, and not the equitable remedies provided for with mutual mistake, govern this dispute.

Holmes' attempt to recast the facts into a case of mutual mistake is unavailing. Because the record does not support the existence of a shared misunderstanding, Holmes' motion for summary judgment on a theory of mutual mistake is denied.

### IV.   CONCLUSION

For the aforementioned reasons, the Court hereby ORDERS that Holmes' Motion for Summary Judgment (R. 115) is DENIED.

This 7th day of May, 2026.



**Signed By:**

_**Karen K. Caldwell**_

**United States District Judge**