**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| SAMUEL HOLMES | CASE NO. 5:23-CV-249-KKC |
| **Plaintiff,** | |
| v. | **OPINION AND ORDER** |
| LEXINGTON-CJD, LLC d/b/a/ FREEDOM CDJR OF LEXINGTON | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff Samuel Holmes' Motion to Certify Orders for Interlocutory Appeal and Request for a Stay. (R. 118.) For the following reasons, Holmes' Motion is denied.

## I.   BACKGROUND

Holmes' present Motion is the latest step in a series of filings following the Court's October 23, 2025 Order. That Order granted and denied in part Defendant Lexington-CJD, LLC's ("Freedom") motion for summary judgment. (R. 82.) Specifically, it allowed Holmes' breach of contract claims to proceed but granted summary judgment in favor of Freedom on all other counts, including fraud. (*Id.* at 15.)

Holmes then moved for reconsideration of that Order, focusing exclusively on reviving the dismissed fraud claim. (R. 90.) His motion made explicit the importance of the fraud claim, noting that its dismissal "impacts possible settlement, the potential size of the verdict, and the possibility for a recovery proportionate to the cost of achieving it." (*Id.* at 2.) His reply brief was even more direct, explaining that without fraud, his recovery would likely be limited, whereas a fraud claim could support punitive damages several times that amount,

making the case economically viable. (R. 92 at 25.) In other words, Holmes candidly acknowledged the financial incentive underlying his effort to preserve the fraud claim.

The Court denied reconsideration on January 22, 2026. (R. 95.) Holmes then sought to reopen proceedings by moving to amend the discovery deadline so he could file his own motion for summary judgment. (R. 96.) Once again, he emphasized that, without the dismissed claims, he was "bereft of the possibility to recover any amount of punitive damages," and stated that allowing him leave to file was necessary to make the case worthwhile. (*Id.* at 2–3.) The Court granted leave to file the motion (R. 108), but ultimately denied it (R. 116). The Court then scheduled a telephonic conference to address pretrial and trial dates. (R. 117.) Now, just over two weeks before the conference, Holmes seeks a certificate of appealability for three of the Court's previous Orders in an effort to revive the fraud claim.

## II.  LEGAL STANDARD

Title 28 U.S.C. § 1291 provides for appeal only from "final decisions of the district courts of the United States." Pursuant to 28 U.S.C. § 1292(b), however, a district court may certify an order for interlocutory appeal if the following conditions are met: "(1) a controlling legal question is involved; (2) there is substantial ground for difference of opinion regarding it; and (3) an immediate appeal would materially advance the litigation's ultimate termination." *In re Baker & Getty Financial Services, Inc.*, 954 F.2d 1169, 1172 (6th Cir. 1992) (citation and quotations omitted). "Review under § 1292(b) is granted sparingly and only in exceptional cases." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).

## III.  ANALYSIS

Holmes seeks certification of three Court Orders: (1) the October 23, 2025, Order granting and denying in part Freedom's motion for summary judgment (R. 82); (2) the January 22, 2026 Order denying his motion for reconsideration (R. 95); and (3) the May 7,

2026 Order denying his motion for summary judgment (R. 116). (R. 118 at 1.) Additionally, Holmes seeks a stay of the proceedings until the Sixth Circuit can address the arguments. (*Id.*)

Before analyzing the § 1292(b) standard, Freedom makes a threshold argument that the appeal should be denied because it was made too late. (R. 119 at 4.) The Parties dispute the timeliness of Holmes' filings. (*Compare* R. 118 at 3 'There is no deadline for seeking certification . . .", *with* R. 119 at 4 "Courts have 3 consistently treated delays exceeding two months as presumptively unreasonable.".) The Court declines to make a technical ruling based on timeliness and will address Holmes' motion on its merits.

Turning to the merits, Holmes does not satisfy the first condition of § 1292(b). Certification is reserved for "exceptional cases," and requires a controlling legal question as to which there is substantial ground for difference of opinion. *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). Holmes does not identify an unsettled question of law. Instead, he challenges how this Court applied substantive evidentiary principles under Kentucky law to the federal summary judgment standard. Because both areas of law are settled, this is not an exceptional case warranting review.

Holmes presents the following question for certification:

> The controlling question of law is whether a presumption established in the context of post-trial appellate review may be applied as a screening device at the summary judgment stage, and if so, how that presumption interacts with the summary judgment standard articulated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

(R. 118 at 4–5.) Specifically, Holmes suggests that applying Kentucky's presumption of innocence and honesty at the summary judgment stage conflicts with *Liberty Lobby*, because courts must draw all reasonable inferences in favor of the nonmoving party. He asserts that applying the clear and convincing evidence standard simultaneously with the

3

presumption of honesty created an impermissible "stacking" effect. (R. 118 at 6.) However, this argument overlooks the very principle *Liberty Lobby* announced.

To understand why Holmes' proposed question does not warrant interlocutory review, it is necessary to place his argument within the framework established by the Supreme Court's summary judgment precedent. In 1986, the Supreme Court issued three decisions that collectively define modern summary judgment practice. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Liberty Lobby,* 477 U.S. 242; and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

In *Celotex*, the Court held that a defendant may obtain summary judgment by demonstrating that the plaintiff lacks evidence necessary to prove an essential element of his claim. 477 U.S. at 322–25. Once the moving party identifies the absence of proof, the burden shifts to the nonmovant to come forward with admissible evidence demonstrating the existence of a genuine issue for trial. *Id.* at 324. Put differently, Rule 56 permits a party to challenge whether its opponent can actually prove its case.

*Liberty Lobby* addressed the next logical question: what quantum of evidence must the nonmovant produce in response? 477 U.S. at 254. The Court explained that the answer depends upon the substantive evidentiary burden applicable to the claim. *Id.* at 252. The issue before the Court was whether a judge evaluating summary judgment must consider the heightened clear-and-convincing-evidence standard applicable to actual malice claims under *New York Times Co. v. Sullivan. Id.* at 254. The Supreme Court answered that question unequivocally in the affirmative.

The Court held that "the inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* at 252. Thus, when a claim must ultimately be proven

4

by clear and convincing evidence, the summary judgment inquiry becomes whether a reasonable jury could find that burden satisfied. *Id.* at 254–55.

As the Court further explained, "[t]hus, in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254. The Court emphasized that it would make little sense to ask whether a jury could reasonably find for a party without considering the standard that would govern the jury's deliberations. "The question here is whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not." *Id.*

Far from supporting Holmes' position, *Liberty Lobby* forecloses it. The very issue resolved was whether a heightened evidentiary standard may be incorporated into the summary judgment analysis. The Supreme Court held that it must be.

*Matsushita* reinforced the same principle. *See* 475 U.S. 574, 587 (1986). There, the Court held that when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* Summary judgment is therefore appropriate when the evidence, viewed under the governing substantive standard, is insufficient to permit a rational jury verdict for the nonmovant.

The Sixth Circuit has repeatedly applied these principles. In *Street v. J.C. Bradford & Co.*, the court reiterated that the substantive law defines what facts are material, any heightened evidentiary burden imposed by that law must likewise be satisfied by the nonmovant. 886 F.2d 1472, 1479 (6th Cir. 1989). As noted by the Sixth in *White v. Turfway Park Racing Ass'n*:

> Where the nonmoving party faces a heightened burden of proof, such as clear and convincing evidence, he must show in opposition to the motion for summary judgment that he can produce evidence which, if believed, will meet the higher standard.

5

909 F.2d 941, 944 (6th Cir. 1990). Holmes' contention that this case bears no relation to the issue is misplaced. Although the facts of this case are distinct, the Sixth Circuit's articulation of the relationship between the clear and convincing evidence and summary judgment standards is directly on point.

Against this backdrop, Holmes' proposed question does not identify an unresolved legal issue. The Supreme Court and Sixth Circuit have already answered it. Courts must evaluate summary judgment through the lens of the substantive evidentiary burden that governs the claim at trial. Because Kentucky fraud claims require proof by clear and convincing evidence, that standard necessarily informed this Court's summary judgment analysis.

This reasoning is precisely why Kentucky's presumption of innocence and honesty does not conflict with the federal summary judgment standard. Holmes characterizes the Court's analysis as imposing two independent burdens: first, a presumption that Freedom acted honestly; and second, a requirement that he prove fraud by clear and convincing evidence. (R. 118 at 6.) The Court, following Kentucky law, did not treat the doctrines as distinct in the manner alleged.

Rather, the presumption of innocence and honesty is simply another way of expressing the heightened burden Kentucky law applies to allegations of fraud. Kentucky courts have long recognized that fraud is never presumed and must instead be established through evidence that clearly and convincingly demonstrates intentional wrongdoing. *See Goerter v. Shapiro*, 72 S.W.2d 444, 445–46 (Ky. 1934); *Pacific Mut. Life Ins. Co. v. Arnold*, 90 S.W.2d 44, 49 (Ky. 1935). The presumption and the heightened evidentiary burden operate toward the same end: both require proof sufficiently persuasive to overcome the law's preference for interpreting ambiguous conduct as consistent with honesty rather than fraud. *See T.M.*

*Crutcher Laboratory v. Crutcher*, 157 S.W.2d 314, 319 (1941) (quoting *Pacific Mut. L. Ins. Co. v. Arnold*, 90 S.W.2d 44, 49 (1935)).

Accordingly, there is no "stacking" effect. The presumption does not add an additional layer of proof beyond clear and convincing evidence. It merely reflects Kentucky's requirement that allegations of fraud have a higher burden of proof. Whether framed as a requirement that the plaintiff prove fraud by clear and convincing evidence or as a requirement that the plaintiff overcome the presumption of honesty, the inquiry remains the same: has the plaintiff produced evidence from which a reasonable jury could conclude that fraud occurred? *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986).

This Court previously answered that question in the negative. It found that Holmes failed to produce evidence from which a reasonable jury could find, by clear and convincing evidence, that Freedom fraudulently falsified the mileage disclosures. (R. 82 at 11.) In reaching this conclusion, the Court did not weigh the evidence. Rather, consistent with *Liberty Lobby*, it examined whether the evidence identified by Holmes could satisfy the substantive evidentiary burden governing fraud claims under Kentucky law. Having concluded that it could not, the Court granted summary judgment on the fraud claim. (R. 82 at 11.)

Holmes further argues that the cases cited for Kentucky's presumption of honesty only apply the presumption at trial or during post-trial review. (R. 118 at 5.) He asserts that using the presumption as a "screening device" at summary judgment is improper. (*Id.* at 4.) This argument misconstrues the effect and timing of legal presumptions. If Holmes were correct, a fraud plaintiff would have to plead fraud with particularity in his complaint in accordance with Fed. R. Civ. P. 9(b) but would then receive the benefit of having the presumption ignored at summary judgment, only to have it reappear at trial when the jury is instructed on the governing law. *Liberty Lobby* rejects exactly that kind of disconnect between the summary

7

judgment inquiry and the trial standard. The presumption of honesty is a substantive principle of Kentucky fraud law, not a procedural rule triggered by a particular stage of litigation. Whether a court encounters the issue on summary judgment, at the directed-verdict stage, or after trial, the underlying question remains the same: has the plaintiff produced evidence to satisfy the clear-and-convincing-evidence standard? *Liberty Lobby,* 477 U.S. at 254. This Court previously concluded that he did not:

> Holmes does not point to sufficient evidence that Freedom's conduct was intentional or reckless. There is no evidence in the record, let alone clear and convincing evidence, that the erroneous mileage presented in the Purchase Packet was inserted intentionally or recklessly. Similarly, Holmes does not present sufficient evidence as to how Freedom intentionally or recklessly distracted his attention, or suppressed vital details of the transaction in an effort to keep him from finding out the "actual" mileage.

(R. 82 at 11.)

The governing legal principles are settled. There is no substantial ground for difference of opinion warranting interlocutory review under § 1292(b), as *Liberty Lobby* directly resolves the question Holmes seeks to certify. Because the Court denies certification, it will further deny Homles' request to stay the case.

## IV.  CONCLUSION

For the aforementioned reasons, the Court hereby ORDERS that Holmes' Motion to Certify Orders for Interlocutory Review and Request for Stay (R. 118) is DENIED.

This 8th day of June, 2026.

**Signed By:**

*Karen K. Caldwell*

**United States District Judge**